26 C.C.P.A. (Patents)

## BRAY et al. v. TEARS.
### Patent Appeals No. 4093.

Court of Customs and Patent Appeals.
April 10, 1939.

Edward B. Beale, of Washington, D. C. (Philip Subkow, of Los Angeles, Cal., of counsel), for appellants.

Philip S. McLean, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein the Board of Appeals of the United States Patent Office awarded priority of invention to appellee with respect to the single count in issue, reversing the decision of the Examiner of Interferences which awarded priority of invention to appellants.

The count reads as follows: "1. A process for treating lubricating oil which includes diluting the lubricating oil with a normally gaseous liquefied hydrocarbon diluent maintained at superatmospheric pressure sufficient to maintain the diluent liquid, contacting said diluted oil with clay at such pressure and separating the treated oil dissolved in said liquefied diluent at superatmospheric pressure from the clay, and separating said oil from said diluent."

The nature of the invention is sufficiently disclosed by the count.

The interference arises between an application of appellants filed June 12, 1934, stated to be a continuation of a copending application filed August 4, 1931, and an application of appellee filed May 25, 1934, stated to be a division of appellee's application Serial No. 679073, the filing date of which does not appear in the record.

Originally four parties were involved in the interference—appellants, appellee, and two others, Stanton and Weir. The interference was terminated as to Stanton apparently because he alleged conception and reduction to practice of the invention subsequent to the filing date of appellants and Weir.

The preliminary statement of appellee alleged conception and reduction to practice of the invention subsequent to the filing dates of appellants and Weir.

Thereupon the Examiner of Interferences issued an order to show cause within 45 days why judgment on the record should not be entered against appellee and Stanton. Within said time appellee moved to dissolve the interference upon two grounds, one of which was that appellants and Weir had no right to make the claim constituting the count. It is contended by appellants that the grounds here urged upon this point. were not specifically set out in said motion to dissolve and that the question hereinafter discussed may not properly be considered, for lack of compliance with the provisions of rule 122 of the Rules of Practice of the United States Patent Office. The Board of Appeals held that the motion to dissolve was sufficient under rule 122, and while we think the sufficiency of the motion to dissolve is very questionable, we prefer to consider the case upon its merits in view of the fact that the conclusion we have reached requires a reversal of the decision of the Board of Appeals, and the final result is the same as if we should decide that appellee's motion to dissolve was insufficient to raise the issue before us upon its merits.

With respect to said motion to dissolve the Primary Examiner dismissed the first ground of the motion, and· this action is not here involved. He set the second ground of the motion for hearing on December 20, 1935.

Other motions were made before the decision of the Primary Examiner upon the motion to dissolve, none of which are material here.

One of the grounds urged by appellee before the Primary Examiner in support of his contention that appellants' disclosure does not support the count was that appellants' application does not disclose the steps in the count reading "contacting said diluted oil with clay" and "separating the treated oil * * * from the clay."

The Primary Examiner denied the motion to dissolve, holding that appellants' application does disclose both steps above set out.

Thereafter, on April 1, 1936, the Examiner of Interferences rendered judgment that neither appellee nor Stanton is the first inventor of the subject matter in issue. As Stanton had made no response to the order to show cause, this judgment eliminated him from the interference. Under said judgment the only parties left in the interference were the appellants and Weir. Under date of March 6, 1937, Weir's assignee filed a disclaimer of the invention set forth in the count, which eliminated Weir from the interference.

Tears, appellee here, appealed from said judgment to the Board of Appeals.

■ It is stated in appellants' brief that appellants and Weir took testimony, but the record contains no testimony or reference thereto, from which we assume that any testimony taken had no relevancy to the issues before us.

It appears from the record that, as between the parties hereto, the count originated in appellants' application; that it first originated in a motion of appellants in another ·interference, No. 67,974 (in which appellee was not a party) to add a new count thereto, which was identical with the count here involved. This motion was granted on April 6, 1935, and the count was inserted as a claim in appellants' application Serial No. 555,018, of which their application here involved is a continuation. Thereafter the count before us was inserted in appellants' instant application and on April 27, 1935, was found allowable by the Primary Examiner.

On April 23, 1934, the Primary Examiner suggested to appellee, for purpose of interference, said claim of appellants' application corresponding to the count before us, and on May 15, 1935, appellee copied said claim, reserving "the right to raise any proper question concerning the same by motion or otherwise."

The Primary Examiner in his decision upon appellee's motion to dissolve stated:

"The party Tears urges that Bray and Swift have no right to make the claim because they do not disclose the 'contacting' step. In the Bray and Swift disclosure a mixture of liquid propane and oil, and some residual sludge from a prior acid treating step passes by pipe 71 into the 'clay tower' 72 and percolates through a bed of clay therein, the purified oil and propane leaving through pipe 73. It is the contention of the party Tears that the filtration step carried out in tower 72 of Bray and Swift does not satisfy the language of the count because 'the term "contacting" has a very definite meaning in the oil refining art and is used to distinguish the contact method from the percolation method of decolorizing.'

"The examiner recognizes the distinction between 'contact' and 'percolation' filtration. However, it must be pointed out that the count defines the act of bringing together the diluted oil and the clay in very broad terms, and it is not believed that the count can be restricted, as Tears would have it restricted, to a particular manner of bringing together the diluted oil and the clay. In an interference proceeding the claims of the issue must be given the broad interpretation which their terms reasonably warrant when read in the light of the application in which they originated. Campbell v. Gilpin, 1926 C.D. 151. The present count originated in a motion of the party Bray in interference 67,974, and was at that time inserted in the Bray and Swift patent case Serial No. 555,018, of which the Bray and Swift case here involved is a division. The language of the count is broad, and when read in the light of the Bray and Swift disclosure it is believed to be supported by such disclosure and not to be inconsistent therewith. If any of the parties involved considers that there is patentable novelty in the particular method disclosed by him of bringing together the clay and the diluted oil, no difficulty should be encountered in choosing language to define that novelty in such a way as to distinguish from mere 'contacting said diluted oil with clay' as broadly defined by the count."

Thereafter the Examiner of Interferences entered judgment upon the record, awarding priority of invention to appellants.

The board reversed the decisions of the Examiner of Interferences and awarded priority of invention to appellee. In its decision the board stated:

"The question involved goes back to a decision of the Primary Examiner holding that the party Bray and Swift can make the count.

"It appears that in the Bray and Swift disclosure the oil is caused to percolate through, and contact with, a bed of clay. When the oil passes from this bed, it is, of course, separated from the clay. We believe, therefore, that in the ordinary usage of the terms, the count clearly reads upon the Bray and Swift procedure.

"In the application of the party Tears, however, no percolation through clay is carried on but the clay is mixed with the oil and then afterward the oil is separated from the clay. The party Tears argues that in this art the term 'contacting' has acquired a distinct meaning which does not indicate percolation. In his decision the Primary Examiner states:

" 'The examiner recognizes the distinction between "contact" and "percolation" filtration.'

"It appears, therefore, that the examiner recognized that the term 'contact' had a different meaning from 'percolation' because we consider that 'contact' cannot be regarded as modifying filtration, although it may be true that, after a contact procedure has been carried out, the oil will be separated from the clay by passing the same through a filter. We believe, however, that a contact treatment is usually not a percolating operation. We think, however, that in percolating oil through clay under certain conditions, a contact operation may occur simultaneously. However, in the Bray and Swift disclosure there is no description of any such conditions, we believe, as will cause both operations. We therefore are of the opinion that there is no disclosure of a process such as the term 'contact' generally indicates in this art. We do not believe that any one skilled in this art, with only the Bray and Swift disclosure, would draw a claim of this nature. We consider that this is one instance in which a term of a claim should be given a limited interpretation in view of the meaning which it has acquired in a particular art."

From the judgment so entered, appellants have appealed to this court.

The principal question before us is the meaning that should be given to the words "contacting said diluted oil with clay."

It seems to be conceded by the parties that there are two general methods of decolorizing lubricating oil. These methods are stated in appellants' brief as follows:

"A brief statement of the two salient methods of contacting lubricating oil with clay are:

"(a) The percolation method

"(b) The contact filtration process

"In the *percolation* method, the oil is permitted to flow either upwardly or downwardly through a bed of clay, the individual particles of which are of sufficient size so that passage of the oil between the clay particles is possible either through the downward effect of gravity or the upward effect of a moderate excess pressure. Naturally, the bed of clay is confined in a suitable column or tower. In passing around and between the individual particles of clay throughout the bed, the oil is brought in contact with the clay and subjected to the desired treatment. One of the results of such treatment is the removal of undesired color bodies so that the oil is to a certain extent decolorized.

"In the *contact filtration* process, the oil and finely divided clay are brought in contact so as to form a suspension or slurry. If a certain amount of agitation is imparted to the slurry, the particles of clay tend to remain in a more or less homogeneous suspension. The clay is ultimately separated from the oil by moving the slurry toward a filter, on the filtering surface of which the clay is deposited while the oil passes through the filtering surface. Thus the clay is separated from the oil. Similarly, in the percolation process, the oil is separated from the clay when the oil has passed through the bed of clay either by discharge over the top of the bed or by withdrawal from the bottom of the bed depending upon the direction of passage."

Appellee is apparently in agreement with the foregoing description of the two methods, but denies that the percolation method involves contacting the oil with the clay, within the meaning of the term "contacting" as understood in the art. In appellee's brief it is stated:

"Bray and Swift themselves are on record before this Court as recognizing the distinctions between percolation and contacting methods. On page 12, of their brief, they describe the percolation method as one in which the oil is permitted to flow through a 'confined' bed of clay made up of particles 'of sufficient size' and contact filtration as one in which the oil 'and finely divided clay' are brought in contact (they would not say 'contacted') 'to form a suspension or slurry'—the suspension being more homogeneous with agitation—and the clay being 'ultimately separated from the oil by moving the slurry'—with the clay travelling along with the oil—to a filter. 'Thus the clay is separated from the oil' (foot of p. 12).

"We agree that it is 'thus' the clay is separated from the oil, within the intent of the count. It seems a futile gesture after such recognition of facts for them then to argue as they do at the top of page 13 (brief) that 'in both methods the clay and oil are brought into *contact* within the ordinary Dictionary meaning of the word' for in the first place, the count does not say simply bringing into contact and in the second place, we are dealing with terms which have established themselves as having special meaning in a highly technical art and with experts who know what such terms mean, apart from any ordinary Dictionary meaning. If Bray and Swift insist on this Dictionary meaning, they in effect attack the validity of the count, for any one knows that simply bringing ordinary clay and oil into contact with each other will not accomplish any new and patentable result."

■ It is elementary that counts in an interference, if not ambiguous, should be given the broadest interpretation which they will reasonably support, and, if ambiguous, resort for their interpretation should be had to the application in which they originated.

It was held by the board that, within the common meaning of the term "contacting" the count clearly reads upon appellants' disclosure. This is not challenged by appellee, but he contends, and the board held, that the term "contacting" as used in the involved art has a restricted meaning, and that under such restricted meaning appellants' application does not support the count.

■ The board observed that in the process disclosed by appellee there is no percolation through clay, but the clay is mixed with oil and then afterwards the oil is separated from the clay. The count was cop-

ied by appellee from appellants' application, where it was an allowed claim, and if there be any ambiguity in the count its meaning is to be determined from an examination of that application, and not from the application of appellee. Brogden v. Slater, 40 F.2d 988, 17 C.C.P.A., Patents, 1240.

Appellee makes some contention that the count did not originate in appellants' application, but the record clearly shows that it did so originate. The fact that it was first suggested by appellants in another interference is wholly immaterial, so far as the issues in this case are concerned.

It is appellee's contention that the word "contacting" should not be given its common meaning in construing the count for the reason, as he contends, "that said word as used in the oil refining art has a restricted meaning," and that, construing the count with such restricted meaning, it is not supported by appellants' disclosure.

We find nothing in the record establishing any restricted meaning of the word "contacting," as used in the particular art, and only by taking judicial notice of what is within the special knowledge of those engaged in the oil industry could any restricted meaning of the word "contacting" as used in the count be found. We have grave doubt that judicial notice may be taken of facts within the special knowledge of those engaged in a particular art, not presumably a matter of common knowledge to all, but we do not find it necessary to decide that question here.

It will be observed that the board does not hold that the word "contacting" has a uniform and definite restricted meaning in the art involved. It holds that "a contact treatment is *usually* not a percolating operation" (italics ours), and that "there is no disclosure of a process such as the term 'contact' *generally* indicates in this art". (Italics ours.) The clear implication from the foregoing is that the word "contact" is sometimes used in the art according to its common meaning.

Funk & Wagnalls New Standard Dictionary defines the verb "contact," so far as its definition is here pertinent, as follows: "contact. * * * to be in contact; touch :"

In the notes following the definition of the word "contact" as a noun we find the following: "contact-bed, 1. a form of

sewerage-filter. * * * contact-process, any of several methods of utilizing contact action, as in chemistry and physics."

From the foregoing it would seem that the word "contact" is used in the arts broadly, and we specially call attention to the definition of "contact-bed," which indicates a process closely allied to the process of percolation disclosed by appellants.

However this may be, we are of the opinion that, while it is ordinarily true that the meaning of a term in a claim or count is to be determined by its meaning in the particular art involved, where a term in a count has a common meaning and also a more limited meaning, and is not always used in the art according to its limited meaning, the term is sufficiently ambiguous to warrant resort to the application where it originated to ascertain its meaning as used in a count. See Hausman v. Hochman, 83 F.2d 703, 23 C.C.P.A., Patents, 1162.

Therefore, considering the word "contacting" in the light of appellants' application where the count originated, it is clear that the word was used in appellants' claim corresponding to the count according to its common meaning, and in the circumstances that common meaning must be given by us to the count, and, as held by both Patent Office tribunals, under such common meaning of the word "contacting," appellants' disclosure supports the count.

Appellee further contends that appellants' application does not disclose the element of the count reading: "separating the treated oil dissolved in said liquefied diluent at superatmospheric pressure from the clay." Upon this point the Primary Examiner, in his decision upon the motion to dissolve, stated:

"Tears urges that in their process Bray and Swift do not have and do not need 'a separate step of separating the oil from the clay'. The basis for this contention is that after passing the oil through the clay, Bray and Swift 'have accomplished separation and have no need for and actually have no separate step of then separating the oil from the clay'. As already stated, the examiner is of the opinion that the bringing together of the diluted oil and clay in tower 72 satisfies the 'contacting' step of the count. When the diluted oil overflows through pipe 73 it passes out of the zone of contact with the clay, and is according-

ly literally separated therefrom, and that is all that the broad language of the count requires."

We are in accord with this statement of the examiner.

For the reasons stated, construing the terms of the count·as broadly as they will reasonably permit, we must hold that appellants' disclosure in their application supports the involved count, and that the Board of Appeals erred in awarding priority of invention to appellee.

Therefore the decision appealed from is reversed.

Reversed.