**Application of Chester John CAVALLITO and Allan Poe Gray.**

**Patent Appeal No. 6502.**

United States Court of Customs and Patent Appeals.

July 6, 1960.

Rehearing Denied Oct. 10, 1960.

Laurence & Laurence, Herbert.I. Sherman, Washington, D. C. (Dean Laurence, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge C. WILLIAM KRAFT, Jr.*

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 1 and 2 of appellants' application for a patent on Bis-Quaternary Ammonium Substituted Alkanes. No prior art was cited, the rejection being based on the ground of undue breadth. Since the portions of the two appealed claims on which that rejection is based are identical, it will be sufficient to reproduce claim 1 which is as follows:

"1. An $\alpha'\omega$-bis-(quaternary-ammonium)-substituted alkane salt, wherein the alkane portion of the molecule contains from three to twelve carbon atoms, inclusive, wherein one quaternary-ammonium group contains up to 10 carbon atoms inclusive, and up to one N-hetero-monocyclic group, wherein the other quaternary-ammonium group includes a benzopyridine nucleus containing up to three fused rings and up to six hydrogen atoms on the pyridine portion of said nucleus, and wherein the anions are non-toxic acid residues."

As stated by the board, appellants' application lists at least thirty compounds within the scope of the appealed claims, "coupled with an intention to cover the nucleus presently claimed." It is also stated in the application that "The compounds have utility as hypotensive agents." The sufficiency of that statement as a disclosure of utility has not been questioned. No other express disclosure of utility is made in the application.

The statement which has been held to make the claims unduly broad is that the compound "includes a benzopyridine nucleus containing up to three fused rings and up to six hydrogen atoms on the pyridine portion of said nucleus."

The basic features of the claimed compounds, so far as pertinent to this appeal, are well illustrated graphically in appellants' brief as follows:

benzopyridine nucleus

As indicated, the two rings constitute the benzopyridine nucleus and the left-hand ring, which includes the "N" is the pyridine portion of the nucleus. The appealed claims embrace not only compounds including the two ring nucleus as shown, but also compounds in which the nucleus includes a third ring. The claims also cover not only the structure as shown in which three hydrogen atoms are joined to the pyridine portion of the nucleus, but others in which up to six hydrogen atoms are so joined. While the examiner seems to have regarded the claims as covering compounds having as many as five rings in the benzopyridine nucleus, we agree with appellant that the reference to that nucleus as "containing

* United States District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CONNELL*, pursuant to provisions of Section 292(d), Title 28 United States Code.

up to three fused rings" limits the claims to compounds in which there is not more than one additional ring fused to the two which are necessary to form such a nucleus.

The record shows that in his final rejection of the claims as unduly broad the examiner made no reference to the possibility that they might embrace inoperative species, and that when appellant thereafter requested him to "state specifically and support any inoperativeness believed present" he stated that "the breadth rejection stands by itself independent of any allegation of inoperativeness." However, in his answer to the appeal, the examiner not only asserted that the rejection was proper "without any allegation of inoperative compounds being included within the scope of the claims," but also stated that certain specified compounds falling within the scope of the claims contained radicals which would be expected to be antagonistic to "the hypotensive effect that all the compounds are said to exert."

In affirming the examiner the board stated that "a very large group of compounds running into the hundreds of thousands is covered by the appealed claims" and that "In our opinion the examples given are not by any means representative of the vast group covered by the claims. * * * To aggravate the matter appellants' compounds are in a field in which prediction is very limited, i. e. in the field of therapeutics. In such cases we believe an applicant's claims should conform rather closely to the scope of his tangible disclosure." The board also appears to have relied, to some extent at least, on the examiner's statement that certain specified classes of compounds apparently would not have hypotensive properties.

Appellants filed a petition for reconsideration in which the board was requested to indicate that its reliance on inoperative species constituted a new ground of rejection so that appellants could make a further showing before the examiner as to that matter, or, alternatively, to delete the portion of its opinion relating to inoperativeness. The board declined to follow either course, pointing out that appellants did not file a brief in reply to the examiner's answer, and stating that the examiner's assertions as to inoperativeness did not constitute a new ground of rejection but merely an additional reason in support of the original ground of undue breadth.

Appellants' reasons of appeal here, in addition to questioning the merits of the rejection, assert that the board erred in giving weight to the examiner's assertions.

■■ Section 1208.01 of the Patent Office Manual of Procedure provides that when a new ground of rejection is included in the examiner's answer to an appeal, the appellant may, within sixty days file a reply containing "any amendment or material appropriate to the new ground" and that the board may, in its discretion remand the case to the examiner "to consider such amendment or material." Since appellants did not elect to file such an amendment or reply we are of the opinion that the board properly considered the examiner's statements as to possible inoperative compounds, even if such statements are considered as constituting a new ground of rejection. Moreover, we agree with the board that the possible existence of compounds falling within the scope of the claims, but not having the utility set forth in appellant's specification, may properly be considered in connection with a rejection on undue breadth.

The question whether a broad claim to an invention in the field of chemistry is sufficiently supported by the compounds named and examples given in an application has been frequently considered by this court. As was said in In re Shokai et al., 242 F.2d 771, 773, 44 CCPA 854:

"The decisions do not however fix any definite number of species which will establish completion of a gener-

ic invention and it seems evident therefrom that such number will vary, depending on the circumstances of particular cases."

■ The mere fact that a claim covers a large, or even an unlimited number of products, does not necessarily establish that it is too broad. Claims are commonly allowed for alloys or mixtures which permit substantial variations in the proportions of two or more ingredients. Theoretically an infinite number of products may be produced falling within the scope of such a claim. In the case of alloys or mixtures, however, it is generally apparent how a product of any desired proportions may be produced, and, since the properties of the aggregate ordinarily vary in accordance with the proportions of the ingredients, the characteristics of any aggregate covered by the claim can generally be predicted with reasonable certainty if the properties of typical aggregates are known. In such cases an applicant, by fixing the ranges of proportions and describing a few examples throughout the range, may enable anyone skilled in the art to make any product covered by the claim, and may inform him as to what properties such a product will have.

The same principle should apply to claims covering a wide range of distinct chemical compounds. However, because of the proportion of unknown compounds it will ordinarily be necessary to give many more examples and much more specific information than would be necessary in the case of an alloy or a mixture.

■ There can be no doubt that appellants' application, as filed, clearly indicated that they regarded their invention as broad enough to embrace all the compounds covered by the appealed claims. This is clear not only from the fact that the appealed claims were included in the application as filed, but also that the statement of the invention in the first paragraph of the specification is virtually a paraphrase of appealed claim 1. Accordingly, the claims are not too broad

in the sense of embracing a concept which was not stated in the original disclosure of the application.

■ The mere statement of an inventive concept, however, is not a sufficient basis for claiming it. Sufficient information must be given to enable those skilled in the art to practice the invention.

■ The appealed claims are drawn to compounds *per se* and are not limited in any way to uses of such compounds. Nevertheless, a compound is not patentable unless it has utility and a manner of using it is either obvious or is described in the application. Utility is a prerequisite to the patenting of an invention. As was said in White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 74, 30 L.Ed. 303, "The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is." It is not necessary to determine whether the presence of one or two useless compounds within the scope of a claim to a chemical compound would render it unpatentable, but where the applicant seeks to obtain a monopoly in exchange for his disclosure of a group of compounds there should be a disclosure which gives reasonable assurance that all, or substantially all of them are useful. That is especially true where, as here, the claims are not drawn in terms of a recognized genus but are directed to a more or less artificial selection of compounds. There is no reason why a claim drawn in this way should not be limited to those compounds which are shown to be both new and useful. An applicant is not entitled to a claim for a large group of compounds merely on the basis of a showing that a selected few are useful and a general suggestion of a similar utility in the others. See Corona Cord Tire Co. v. Dovan, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Libbey-Owens-Ford Glass Co. v. Celanese Corp. of America, 6 Cir., 135 F.2d 138, and cases there cited.

It is not disputed that the appealed claims cover several hundred thousand possible compounds, of which only thirty

are specifically identified in appellants' application. The formulae of all the compounds claimed have certain basic structures in common, but may differ widely as to the addition or variation of substituents at specified points. Appellants refer to those as "garbage" substituents, and say that they form no part of their inventive concept but may be added or omitted as desired. They argue that if they are denied claims such as those on appeal, others may utilize their invention without infringing their claims merely by adding some of the obvious and immaterial substituents to the specific compounds to which their allowed claims are limited.

Appellants' argument would be more persuasive if their application established with certainty that the basic formula defined in the appealed claims will impart useful hypotensive properties to the wide variety of compounds embraced by the claims; or, in other words, that the various possible substituents are in fact "garbage substituents" in the sense that they do not materially affect the desired hypotensive property.

The board was of the opinion that "the examples given are not by any means representative of the vast group covered by the claims," and further stated that "The present specification provides no assurance that even the compounds specifically mentioned much less all of the other compounds embraced by the appealed claims possess the same or even similar properties. The examples given are unaccompanied by any disclosure of hypotensive potency."

Since the examiner did not question or call for proof of the statement in appellants' application that "The compounds have utility as hypotensive agents," and since he allowed claims covering the specific compounds disclosed, it is reasonable to assume that he accepted the quoted statement as establishing that those compounds had a sufficient hypotensive effect to render them useful. However, there is nothing of record to indicate that they all had the same hypotensive potency, hence nothing which would justify the conclusion that changes in the so-called "garbage substituents" do not affect that potency. If it were shown that all of the thirty specific compounds disclosed had equal hypotensive potency, that fact would strongly indicate that the potency was derived solely from the basic structural formula common to all of them. On the other hand, wide variation in such potency would suggest that it was due in part to the added substituents and might be eliminated or even reversed by many of the possible substituents which had not been tried.

Further evidence that changes in substituents did not affect the basic utility of the compounds might have been afforded by the use of substituents such as ephedrine or dexedrine radicals which normally have a hypertensive effect. If compounds of the kind claimed here, containing such radicals, possessed the same hypotensive potency as those having neutral substituents, that fact would afford a strong indication that the same would be true of the other substituents within the scope of the claims.

In the absence of evidence of the kind just mentioned, we do not think that the fact that thirty of a group of several hundred thousand possible compounds, selected at random or in some manner not disclosed, have some unspecified potency as hypotensives, is sufficient to establish that all or substantially all the compounds of the group are useful hypotensive agents.

We agree with the board that the number and nature of the compounds specifically identified in appellants' application are not sufficient to carry conviction that the compounds of the appealed claims, as a class, possess utility as hypotensive agents, which is the only utility asserted for them in the application. It follows that the claims were properly rejected on the ground of undue breadth.

The decision is affirmed.

Affirmed.