**Application of Henri RIAT, Rene Demontmollin and Eugen Johann Koller.**

**Patent Appeal No. 7010.**

United States Court of Customs and Patent Appeals.

Feb. 20, 1964.

Wenderoth, Lind & Ponack, I. M. Aisenberg, Washington, D. C. (A. Ponack, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Riat et al. appeal [1] from an affirmance by the Board of Appeals of the examiner's rejection of claims 10 and 19 as being unduly broad and indefinite, and as unpatentable over the prior art. One claim has been allowed.

The claimed invention relates to azo dyestuffs having at least two acidic functional groups imparting water-solubility, at least one of which is a sulfonic acid group. The dyes are characterized by a chlorotriazine substituent linked to an azo dyestuff residue (chromophore) via an amine group, said triazine substituent being further substituted by a mercapto alkylene radical containing one or two carboxyl groups.

Claim 19 reads:

19. An organic water-soluble dyestuff of the formula

$$A - N \underbrace{\hspace{2cm}}_{\overset{|}{C}_{n-1}H_{2n-1}} C \underset{N \diagdown C \diagup N}{\overset{N}{\underset{\|}{\diagup \diagdown}}} C - S - CH - (CH_2 - COO)_m - H \\ \overset{|}{COOH}$$

with $Cl$ at the triazine position.

[1]. Serial No. 751,147, filed July 28, 1958.

wherein A is an organic azo dyestuff residue, a ring carbon atom of which is directly bonded to the nitrogen atom of the -N- group, $C_{n-1}H_{2n-1}$ $m$ is one of the numerals 0 and 1, and $n$ is one of the numerals 1 and 2, said dyestuff containing a total of a least two and at most five acid water-solubilizing groups, at least one of which is a sulfonic acid group.

The single reference is

Fasciati    2,795,576    June 11, 1957.

Fasciati discloses a number of dyestuffs including a species which would fall within the genus of the two claims in issue but for a difference in the mercapto (or thiol) radical as follows:

Fasciati:        $-S-CH_2-CH_2-OH$

Riat et al:      $-S-CH_2-\overset{\overset{O}{\|}}{C}-OH$

---

That difference may be delineated as that between an alcohol terminal group (-CH₂OH) and a carboxylic acid terminal group (-COOH) on the thiol radical.

Two issues are before us: whether the claims comply with 35 U.S.C. § 112; and whether it would be obvious to substitute a carboxylic acid terminal group for the alcohol terminal group of Fasciati.

With respect to the rejection based on 35 U.S.C. § 112, we note that the principal objections are to the phrases "an organic azo dyestuff residue" in claim 19, and "the radical of a coupling component" in claim 10, both of which have been held to be too broad and indefinite.

The board reasoned that if the difference between a carboxylic acid group and a hydroxyl group in the mercapto radical will cause a difference in dyeing properties, then at least as great a difference in properties may be expected by a similar change in substituents on the chromophore moiety of the dyestuff. The board therefore was not "convinced that 'all the dyes corresponding to the definitions set forth in the claims possess the disclosed properties'" and that said properties would not be altered by the presence of undisclosed substituents, citing In re Cavallito et al., 282 F.2d 357, 48 CCPA 711. The solicitor relies on that case as demonstrating that the burden is on the applicants to justify the conclusion that changes in the chromophore moiety will have no effect on the usefulness of the claimed compounds.

In Cavallito appellants urged that certain variable substituents were extraneous and formed no part of their inventive concept. This court stated:

"Appellants' argument would be more persuasive if their application established with certainty that the basic formula defined in the appealed claims will impart useful hypotensive properties to the wide variety of compounds embraced by the claims; or, in other words, that the various possible substituents are in fact 'garbage substituents' in the sense that they do not materially affect the desired hypotensive property."

Whether a disclosure gives reasonable assurance that all of the compounds embraced by the claims would be useful for the purposes intended must be determined by the particular circumstances of each case, including the nature of the compounds per se and the supporting disclosure. Here, in contrast to Cavallito which involved pharmaceutical compounds where unpredictability is particularly notorious, we are concerned with azo dyestuffs which constitute an art

recognized genus. We find no suggestion in the record of any compound encompassed by the generic claims which would not be a dyestuff. Both of the appealed claims are drawn to azo dyes and the examiner stated that "azo dyes are well known."

We note that the specification has been drawn broadly to an azo chromophore and narrowly to the triazine component having the substituent in question. It does not appear to include any suggestion that the azo component is critical. In fact, it seems to us that the patent application teaches away from the criticality of the azo component since it indicates, aside from azo dyes, such diverse applicable classes of dyes as stilbene, dioxazine, thioxanthone, azine, xanthone, phthalocyanine and anthraquinone dyes.

We are unable to agree that the invention defined in the claims is inconsistent in scope with the invention disclosed.

Turning to the rejection based on obviousness, we observe that the examiner stated:

"* * * In the present situation, the function of the dye is known, the application of the triazine substituent is old and the employment of mercaptans as secondary condensation reactants for said triazine is also well known. Invention if any, in the present case, is deemed to lie in a known dye employing carboxylated methyl mercaptan as a reactant for said secondary condensation of the triazine. * * *"

The board added:

"* * * We agree with the Examiner that there is nothing unobvious in the use of a mercapto group containing a carboxylic acid rather than one containing a hydroxy group, as both of these groups are quite commonly employed in dye chemistry. * * *"

Appellants argue that the mere fact that those groups are commonly employed

in dye chemistry does not make them equivalent.

The solicitor argues:

* * * It is of importance to note that the appellants' disclosure states that the two groups imparting solubility in water, that is, the sulfonic acid group and one carboxylic acid group may be present in the thiol radical. Hence, the function of the carboxylic acid substituent is to impart water solubility. While it is true that the examiner mentioned the fact that the application discloses the equivalency of the hydroxyl and carboxyl group for that purpose, the Board referred to the fact that "both of these groups are quite commonly employed in dye chemistry." The basis for the statement of the board, though not delineated in the decision can be found in Karrer's Organic Chemistry, pub. in 1946 (2d English Edition) where on page 468 the equivalency of hydroxy and carboxy groups as salt forming groups is fully disclosed. Further attention is invited to U. S. Patent No. 2,283,326 [2] of May 19, 1942, (appendix) where these groups are clearly indicated as equivalents in imparting water solubility to the dyestuffs. * * *

We are unable to find any prior art teaching *in this record* that a carboxylic acid group and a hydroxy group are "equivalents in imparting water solubility to the dyestuffs" as argued by the solicitor, nor that such other properties as leveling and brilliancy are related to water solubility.

Appellants rely on an affidavit to establish that their dyestuffs exhibit unobvious properties. The affidavit compares a dye disclosed by Fasciati with the species falling within claims 10 and 19 that is closest thereto, and with three other dyes including the species of claim 13, which also falls within claims 10 and 19.

2. Appellants and the solicitor incorporated copies of certain U.S. patents as appendices to their briefs, but subsequently withdrew them.

The examiner, in allowing species claim 13 based on that affidavit stated: "* * * Applicants assert that dyeing with the new dyes produces better *leveling* properties and a dyeing with better *brilliancy*. These features are believed persuasive with regards to the patentability of claim 13, which has been allowed. However, this demonstration is not adequately persuasive with regards to claims of the *breadth* of claims 10 and 19. Due to the slight difference in leveling and brilliancy properties of the exhibit dyeings, it is not seen how applicants can assert the same degree of distinction in all the compounds encompassed by the *generic* claims, regardless of the substituents involved." (Emphasis supplied).

We note the absence of any assertion by the examiner that the affidavit was not equally convincing with respect to the *other species* compared. On the contrary, the examiner appears to have equated the differences between *all* of the compared species and the prior art, refusing to allow claims 10 and 19 not because of an absence of a showing of unobvious properties but rather on the basis of noncompliance with 35 U.S.C. § 112.

We are unable, *on this record*, to sustain the board's finding that it would be obvious to substitute a -COOH group for the $-CH_2-OH$ group in the corresponding dyestuff disclosed by Fasciati.

The decision of the board is reversed.

Reversed.