Application of Louis I. HANSEN and
Alexis G. Coutsicos.

Patent Appeal No. 7108.

United States Court of Customs
and Patent Appeals.

June 11, 1964.

Alton V. Oberholtzer, Minneapolis, Minn., Philip E. Siggers, Sherman J. Kemmer, Crystal, Minn., for appellant.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

Appellants have appealed from a decision of the Board of Appeals, adhered to on reconsideration, affirming the primary examiner's rejection of claims, numbered 19–25, 27–32 and 37–39, of appellants' application, Serial No. 670,386, filed July 8, 1957, entitled "Epoxidation Process." The grounds of rejection are that the claims 1) relate to an obvious invention and hence are unpatentable over the prior art (35 U.S.C. § 103), and 2) failed to define properly the invention (as required by 35 U.S.C. § 112) in that they are unduly broad and indefinite.

Epoxidation, to which the invention relates, is a method by which $-\overset{|}{C}=\overset{|}{C}-$ groups of certain mono or poly non-conjugated ethylenically unsaturated compounds are converted to oxirane or epoxy groups, $-C - C-$, by oxidation in acidic medium. Conventionally, peracetic or performic acids are used as oxidizing agents, such acids being formed in situ by reacting hydrogen peroxide, $H_2O_2$, with either acetic or formic acid. As stated in the DuPont Bulletin, of record infra:

"Hydrogen peroxide, which is a mild oxidizing agent, often must be transformed into an organic peracid or activited by some other means to make full use of its oxidizing power. * * *

"The method operates best under conditions for *in situ* formation of an organic peracid, contributing to a highly efficient and economical reaction. By the *in situ* formation of peracid is meant a one-step reaction in which peracid is formed and used in the presence of the material to be epoxidized.

\* \* \* \* \* \*

"Mixing hydrogen peroxide and an organic acid such as glacial acetic acid results in an equilibrium mixture of peracetic acid, hydrogen peroxide, water, and acetic acid.

$$H_2O_2 + CH_3CO_2H \rightleftharpoons CH_3CO_3H + H_2O$$

"In the *absence of a strong acid catalyst*, the attainment of equilibri-

um is impractically slow, especially at temperatures up to 40°C. * * *" [Emphasis added.]

Appellants point out that concentrated sulfuric acid is conventionally used as "strong acid catalyst", the specification noting, however, that certain defects reside in employing either peracetic or performic acid *alone* with or without catalyst.

Appellants' invention is employing as an epoxidizing composition a "synergistic mixture of short chain organic acids as propionic or acetic in combination with formic in the presence of an oxidizing agent [hydrogen peroxide], with or without an acid catalyst."

Appellants' epoxidizable compounds are described as mono or poly non-conjugated unsaturated, substituted and unsubstituted, straight and branched chain, aliphatic and cycloaliphatic compounds of at least 5 carbon atoms which may have the general basic formula set forth. Other groups of ethylenically unsaturated compounds are also indicated. The specification points out that the disclosed "mixed acetic acid and formic acid epoxidation process * * * operates most successfully commercially with long chain unsaturated compounds such as fatty acids, their esters, nitrites and amides" and that epoxidizable "compounds particularly representative of those indicated herein are unsaturated glycerides, acids, and simple or complex esters derived from vegetable, animal, marine and petroleum sources." A list of typical epoxidizable compounds containing ethylenic groups is set forth.

According to the application, the epoxidizing composition may contain hydrogen peroxide in an amount of about 0.3 to 5 moles per mole of epoxidizable ethylenic unsaturation and the workable range of the mixed short chain organic acids is approximately 0.1 to 0.6 moles acetic acid, and from approximately 0.1 up to about 0.5 moles formic acid per mole of unsaturation. The acid catalyst is preferably sulfuric acid, which may be utilized as 0.25% to 5% concentrated acid based on the total weight of the combined short chain acid and formic acid, or a cationic exchange resin may be employed as the catalyst in amounts varying up to 50% based on the weight of the material treated.

The epoxidation reaction is exothermic and the preferred procedure is to charge all unsaturated material to the reactor, add the epoxidizing materials over a period of time, heat to a temperature of 120° F. to 140° F., maintain the temperature at 132° F. to 138° F., and then recover the oily product. "The reaction times and temperature are related to the physical and chemical properties of the compounds to be epoxidized" and the "overall rate of reaction is a function of the concentration of the reactants." Inert solvents may be employed.

The application indicates that the *combined use* of a short chain acid (as acetic acid) with formic acid is *superior* to the use of either acid alone with respect to oxirane and iodine values and other characteristics.

The epoxidized compounds are useful as chemical intermediates, in the textile industry, in the formation of plastics, as plasticizers for vinyl resins and nitrocellulose, in printing inks, in alkyd resins, and in many other uses known to the art.

There are sixteen claims on appeal. All involve a method for producing a compound containing an oxirane linkage, which comprises the steps of mixing an epoxidizable ethylenic compound selected from the group defined in the claims with an epoxidizing composition of reactants comprising hydrogen peroxide and a mixture of short chain monocarboxylic acids from 1 through 3 carbon atoms (Claim 29), effecting epoxidation, and separating the product containing an oxirane linkage. In claims 19 to 25, 27, 28, 30 and 31, the acids in the epoxidizing composition are acetic and formic; while claims 32 and 28 call for a cationic resin as the catalyst, and claim 39 calls for sulfuric acid as the catalyst. The specified proportions, times and temperatures are recited in claims 23 to 25, 27 to 32, and 37 to 39. The use of an

inert organic solvent is recited in claims 21, 22 and 28.

All of the appealed claims are the so-called "Jepson" type claims in which the specific improvement is defined, after general recitals, as

> " * * * the steps comprising mixing the said unsaturated epoxidizable compound with an epoxidizing composition of reactants comprising *in combination acetic acid, formic acid and hydrogen peroxide,* effecting an epoxidation of said ethylenic group by said epoxidizing composition, and separating from the mixture a reacted product containing an oxirane linkage. (cl. 19)" [Emphasis added.]

No useful purpose will be served in full reproduction of the claims in this opinion. They stand rejected on the two separate grounds above referred to. The rejection under 35 U.S.C. § 103 is based on the following prior art:

Niederhauser et al., 2,485,160, October 18, 1949

Ritter, Jr., et al, 2,771,472, November 20, 1956

Greenspan et al., 2,801,253, July 30, 1957

DuPont Electrochemicals Department Bulletin, P 61–454, April, 1954

Chemical Week, December 25, 1954, pages 32 and 35

We shall now consider the separate rejections in the order above stated.

The mandate of 35 U.S.C. § 103 requires a determination of the differences between the prior art and the invention as a whole before we can pass on the patentability of the invention. Despite the technical nature of appellants' disclosure and the technical recitals in the appealed claims, the essence of appellants' invention resides in mixing a novel epoxidizing composition with an unsaturated epoxidizable compound selected from the group of such compounds recited in the claims. The epoxidizing composition is produced by combining acetic acid, formic acid and hydrogen peroxide, thus forming a mixture of peracetic and performic acids.

Appellants' invention differs from the prior art in its use of this novel epoxidizing composition. Thus, Niederhauser et al. discloses a process of epoxidizing esters of oleic and linoleic acids comprising treating the esters with hydrogen peroxide and formic acid.

Ritter, Jr., et al. discloses the epoxidation of the ethylenic unsaturated esters of adipic acid (oleyl, linoleyl or linolenyl adipates) to form the corresponding epoxyoctodecyl esters of adipic acid. The patent indicates that a

> preferred method is to epoxidize the unsaturated esters of adipic acid by means of peracetic acid or performic acid which is formed in situ in an aqueous solution which is in contact with the unsaturated adipate and which contains hydrogen peroxide, formic acid or acetic acid or acetic anhydride, and preferably an auxiliary acidic agent, such as a mineral acid, which has a catalytic effect on the rate of epoxidation.

Greenspan et al. teaches the epoxidation of compounds containing an ethylenic linkage, particularly the esters of higher unsaturated fatty acids, by treating said compounds with hydrogen peroxide, acetic acid and a small amount of sulfuric acid at temperatures from 60°C. to 110° C. for a period from $\frac{1}{2}$ hour to 21 hours.

The DuPont Electrochemicals Bulletin, quoted from supra, discusses a method for the epoxidation of unsaturated fats, oils, and derivatives comprising treating the unsaturated material with acetic acid and hydrogen peroxide in the presence of an acid cation exchange resin.

The Chemical Week publication discusses the epoxidation of fats and oils, disclosing an in situ process involving treating the unsaturated material with hydrogen peroxide and acetic acid in the presence of a strong acid catalyst, such as sulfuric acid or a sulfonic acid type cation exchange resin, at reaction temperatures above 60°C.

It is clear, therefore, that the essential difference between appellants' invention and the disclosures of the prior art is found in appellants' simultaneous use, as epoxidizing composition, of peracetic and performic acids, formed in situ by the *combination* of acetic acid, formic acid and hydrogen peroxide. This analysis brings us then to the question, is this difference such that the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art?

The examiner's position is that it is obvious to mix peracetic and performic acids for use as epoxidizing composition. Thus, his answer states:

"No invention is seen in mixing the well known epoxidizing agents *since the expected functions of each are utilized.*" [Emphasis added.]

With respect to the alleged synergism of appellants' composition, the examiner said:

"Applicants urge that the conjoint utilization of formic acid and acetic acid in the *in situ* epoxidation process results in superior results because the epoxidizing agents have a synergistic effect on each other, however, * * * the specification indicate[s] that the difference, if any, is one of degree only. [Emphasis added.]

"The board agreed with the examiner, saying:

"* * * it * * * [is] noninventive to use a mixture of well-known epoxidizing acid agents *as the expected function of each is so utilized.*

    *     *     *     *     *

"* * * no reason is advanced why a chemist of ordinary skill would *not consider* the use of a mixture of acids as being obvious where as here each is disclosed as being used for the same purpose." [Emphasis added.]

We do not agree with board. One table in appellant's specification compares epoxidized compounds made by acetic acid alone, formic acid alone and mixed acids. Although the board dismisses this showing as "at most * * * [indicating] a difference of degree and * * * not even suggestive of a 'synergistic effect'," we note that in every respect the product formed using mixed acids is superior to that using single acids. There is certainly nothing "expected" about this.

In any event, whether the foregoing results are due to what appellants refer to as the "synergistic effect" or to what the Board of Appeals referred to as the "cumulative or additive effect of the conjoint use of the two conventional acids," the fact remains that appellants appear to have been the first in this highly developed art to teach and use the mixture of acids. Had this been "obvious," we think the foregoing technical advantages asserted by appellants are such that it should have appeared in the art or the literature, if for no other reason than the asserted time saving.

As pointed out in appellants' petition to the Board of Appeals for rehearing:

"It has long been recognized that after accomplishment, almost all inventions and improvements seem simple in the afterlight knowledge of another's disclosure. It was repeatedly pointed out to the Examiner and stated at the hearing that formic acid in combination with hydrogen peroxide and a catalyst are known to the art for effective hydroxylation. The absence of this catalyst combination from the rejection *cited art* herein should give pause for serious consideration. In the absence of applicants' disclosure, it would have appeared more proper to realistically consider the facts of what those skilled in the art have done, using *either or,* in counter distinction to applicants' new and useful combination."

■ We therefore reverse the rejection of the claims on the basis of ob-

viousness over the cited art, and pass now to a consideration of the further rejection of the claims on the ground that they fail to point out particularly and claim distinctly the subject matter regarded as the invention, as required by 35 U.S.C. § 112.

This rejection is outlined in the solicitor's brief as follows:

" * * * The claims are unduly broad and indefinite with respect to their characterization of the epoxidizable compounds as 'poly unsaturated', 'substituted' and 'polymers and copolymers'. The term 'poly unsaturated' included non-ethylenic and conjugated linkages while, as noted by the Board of Appeals * * *, the disclosure indicates that 'the unsaturate group must be ethylenic and non-conjugated'. The term 'substituted' includes any and all possible substituents some of which may adversely affect the desired reaction. The specification of the application at bar recites a number of substituents which are undesirable in the epoxidizable compounds * *. The recitations of 'polymers' and 'copolymers' extend beyond the scope of the disclosure in the specification which, as pointed out by the Board * * * 'is insufficient to support the term and show that all types of polymers will give the desired result.' Since the claims are too broad, they fail to point out and distinctly claim the alleged invention; Corona Cord Tire Co. v. Dovan Chemical Corp., 273 U.S. 692, 47 S. Ct. 570, 71 L.Ed. 843; American Chemical Paint Co. v. Firestone Steel Products Co. (C.A.6) 117 F.2d 927; In re Sus et al., 306 F.2d 494, 49 CCPA 1301, and decisions cited therein."

This ground of rejection is controverted by appellants on the grounds that the compounds involved are defined as "epoxidizable," that the disclosure is sufficiently comprehensive to support the terminology in issue, and that even broad-er terminology has been previously patented.

We have been unable to determine the precise grounds for this rejection. If, as we have analyzed the essence of appellants' invention, it lies in the combination of the acids employed as the epoxidizing agent, this feature appears to be clearly stated in the appealed claims with the particularity and distinctness required in the second paragraph of section 112. It is this step and this step alone which applicants regard as their invention. We know of no statutory provision which requires more than appellants have here done as to claiming this feature. While it is true, as the examiner and the Board of Appeals have pointed out, the language of other parts of the claims is very broad and general, apparently, as asserted by appellants, such broad language is commonly used in this technical art.

The solicitor's brief states what is apparently the real ground of this rejection as follows:

" * * * However, in the absence of a sufficiently comprehensive disclosure to warrant the terminology employed, the broad general reference to 'epoxidizable' in the appealed claims is insufficient especially since, as indicated by the Board of Appeals * * *, the disclosure is limited to compounds that are ethylenically unsaturated and non-conjugated. That the disclosure in the present application is so limited is clearly apparent therefrom and is effectively conceded by the appellants * * *. This alone indicates the propriety of rejecting claims containing * * * the term 'poly unsaturated' as too broad and indefinite. The appellants' arguments do not and cannot obviate the fact that the term 'substituted' in the claims is broad enough to include the substituents characterized as objectionable in the appellants' disclosure * * *. While the disclosure in the specification of the application at bar does refer to certain groups of compounds

830

that may be polymerized as copolymerized with designated groups of compounds * * *, these are limited therein to fatty acids, alcohols and esters and therefore do not provide sufficient support for the considerably broader recitations of 'polymers' and 'copolymers' in the appealed claims. * * *"

While we think this might state a proper ground of rejection under 35 U.S.C. § 112, we have difficulty in reconciling this position with the position of the board that:

" * * * The form of the claims employed by appellants presupposes that the matter recited before the improvement clause is old in the art and as to those compounds shown by the art to be expoxidizable, we are constrained to agree with appellants that the rejection of the corresponding terms cannot be sustained. In the art before us we find that it is fairly well apparent that s i n g l e ethylenically unsaturated groups may be present in either the ester or the fatty acid portion of the ester compounds of the art and also that the epoxidizable mixtures of acetic or formic acids and hydrogen peroxide are known as well as the use of acid catalyst such as sulfuric acid or as the cationic resin. As appellants' alleged invention is in the conjoint use of the conventional acetic and formic acids, their use of the above-mentioned phrases cannot be considered unduly broad or objectionable. * * *"

It appears to us that the underlying problem which this ground of rejection poses is as stated by the board:

" * * * However, it is not clear from the art before us nor has it been shown by appellants that all the types of compounds recited in the Jepson form of claim are part of or are known to the art. While appellants' disclosure is fairly substantial in certain general respects we agree fully with the Examiner that the term 'substituted' is inclusive of substituents which could have an adverse effect on the desired result and we are not convinced that there is adequate support therefor in the disclosure. * * *"

■ Reference to the appealed claims shows that the criticized term "substituted" appears in what we consider to be the preamble [1] of the claim. Thus, although we are, like the board, left in a factual quandary on the present record as to whether a compound so identified was known in the art, we think those skilled in this art would understand from the disclosure and the claims that the term "substituted" was modified by the language "an epoxidizable ethylenic group" and thus would not give the term "substituted" such an interpretation that it would include substituents which would have an adverse effect on the desired result.

For the foregoing reasons, the decision of the board is reversed.

Reversed.

MARTIN, J., sat but did not participate in decision.

1. That portion of claim 19 reads:
    In the method of producing a compound containing an oxirane linkage by epoxidizing an epoxidizable ethylenic group consisting of double bonded carbon atoms present in an epoxidizable compound containing unsaturated epoxidizable carbon to carbon linkages and selected from the group consisting of an epoxidizable mono- and poly unsaturated, substituted and unsubstituted straight and branched aliphatic carbon chains, cyclic and polycyclic aliphatic carbon chains and epoxidizable mixtures, polymers and copolymers of said aliphatic and cyclo aliphatic compounds, the steps comprising * * *.