Application of Chester John **CAVALLITO**
and Allan Poe Gray.

Patent Appeal No. 6508.

United States Court of Customs
and Patent Appeals.

July 6, 1960.

Rehearing Denied Oct. 10, 1960.

**364**

Laurence & Laurence, Herbert I. Sherman, Washington, D. C. (Dean Laurence, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge C. WILLIAM KRAFT, Jr.*

* United States District Judge for the Eastern District of Pennsylvania designated to participate *in place of Judge*

SMITH, Judge.

The issue in the present appeal arises from the affirmance by the Board of Appeals of the examiner's rejection of claim 1 of appellants' application Serial No. 344,677 filed March 25, 1953, for Bis-(N-Heterocarbocyclic) Alkanes.

Appealed claim 1 reads as follows:

"An organic compound selected from the group consisting of (A) those comprising two N-heterocarbocyclic radicals, each radical containing between three and five fused rings joined by an alkylene bridge attached to a nitrogen of each of said radicals, at least three of said rings being composed solely of carbon and nitrogen in the ring, said alkylene bridge containing three to ten carbon atoms, inclusive, and (B) acid addition and quaternary ammonium salts of the foregoing compounds."

Six claims have been allowed. No prior art has been cited and no question is raised as to novelty, utility or unobviousness of the invention.

As described in the specification, the compounds embodying the invention claimed in rejected claim 1 have the general formula $R-C_nH_{2n}-R'$ wherein R and R' are N-heterocarbocyclic radicals each of which contains between three and five fused rings, at least three of said rings being composed solely of carbon and nitrogen as ring-forming atoms * * *." The alkylene bridge $(-C_nH_{2n}-)$ of the molecule is attached to the N-heterocyclic radicals through a ring nitrogen. R and R' may be the same radical or may be different radicals. However, appellants specify that the "heterocyclic moiety of the present invention must contain in at least three of the rings, carbon and nitrogen as the only ring-forming components." There must also be three to five of the fused rings which "must be attached to the alkylene chain to form the compound of the pres-

O'CONNELL, pursuant to provisions of Section 292(d), Title 28 United States Code.

ent invention through a nitrogen of the ring radical."

The invention also contemplates the acid addition salts and the quaternary ammonium salts of compounds having the general formula but only "where such compounds are possible because of the structure of the rings."

The specification describes processes for producing the compounds having the chemical structure claimed in appealed claim 1 and discloses what are termed "representative" dihaloalkanes and "representative" N-heterocarbocyclic substances containing the required three to five fused rings which contain carbon and nitrogen as the ring-forming components in at least three of the rings.

The specification contains 19 examples of illustrative procedures for producing compounds which it is asserted have the claimed chemical structure. The examiner has allowed claims to the specific compounds of certain of those examples and to the quaternary ammonium salts of compounds having the general formula $R–C_nH_{2n}–R$ and in which the N-heterocarbocyclic radical (R) is selected from a group of specified "unsubstituted carbolines, yohimbines, berberine, and hydrogenated and lower-alkyl-substituted carbolines, yohimbines and berberines."

The position of the examiner which was affirmed by the Board of Appeals was that the specification "adequately supports claims to compounds having the carboline, yohimbine or berberine ring structure." He rejected claim 1 as drawn to "a broad elastic formula" which he states was not supported by the specification.

The examiner and the Board of Appeals appear to have given great weight to the large number of possible compounds which would be embraced within the scope of claim 1. Testing this claim as to but one field of the asserted utility, the examiner and the Board of Appeals have rejected the claim as covering inoperative embodiments. In support of this ground of rejection, the Board of Appeals said:

"A chemist will readily recognize that claim 1 is broad enough to cover at least several hundred thousand compounds. Measured against this are the nineteen compounds actually prepared. In our opinion this is insufficient to support such a claim (In re Oppenauer, 31 CCPA 1248; 1944 C.D. 587; 568 O.G. 393; 143 F.(2d) 974; 62 USPQ 297), * * *."

■ There are at least two grounds upon which this rejection is improper and cannot be sustained. (1) Appellant's disclosure is not properly limited to the nineteen specific examples referred to and (2) it is the nature of the disclosure rather than the number of examples given which determines the sufficiency of the disclosure to support the appealed claim.

■ Appellants have disclosed, in addition to the nineteen illustrative examples referred to by the board, a large group of what are said to be representative dihaloalkanes and N-heterocarbocyclic substances which are suitable for use in the general process disclosed for producing compounds within the scope of claim 1. We think the proper evaluation of the disclosed support for claim 1 must be made with respect to the entire disclosure, and this is not limited to the nineteen specific examples.

The examiner and the board appear to have considered only the nineteen specific examples for the reason that these examples are "tangible" disclosures of compounds having therapeutic properties. It is the position of the board that when the subject matter lies in the field of therapeutics, in which prediction is very limited, " * * * the scope of the claims should conform rather closely to the tangible disclosure."

These observations of the board are not determinative of the issue here. Appellants disclosed as their invention chemical compounds having a novel structural configuration. These compounds as disclosed are asserted to be useful not only as "hypotensive agents" but also "as

intermediates in the preparation of more complex organic compounds."

Neither the examiner nor the board has raised any issue as to the sufficiency of these disclosures, so for purposes of this appeal, we are assuming, without passing upon the issue, that appellants' disclosures when read by one of ordinary skill in this art would teach him how to use the claimed compounds either as the disclosed "hypotensive agents" or as the disclosed "intermediates."

Under these circumstances, the examiner and the board should have considered appellants' entire disclosure rather than just the nineteen specific examples to which reference is made in the board's opinion.

■ The examiner and the Board of Appeals also rejected the appealed claim as "too broad in the definition of the heterocyclic radical since the definition leaves open to speculation the nature of the other two rings and the skeletal structure of the first three rings." We do not agree with this rejection. The claimed invention resides in a compound which results from the hooking together of known kinds of N-heterocyclic radicals in a particular way. That way, as specified in claim 1, is by use of an alkylene bridge "attached to the nitrogen of each of said radicals." While the claim is broad in specifying the two N-heterocyclic radicals it is not indefinite in that it claims them in such a manner that an organic chemist having the ordinary skills of this phase of the chemical art, can tell whether any given compound is within or without the scope of the claim. Thus, the claimed limitations require that the N-heterocyclic radical must be:

1. N-heterocarbocyclic;

2. Contain 3, 4 or 5 fused rings;

3. At least 3 of the rings must have ring atoms solely of carbon and nitrogen; and

4. Be joined to the alkalyene bridge through a ring nitrogen.

■ It is our opinion that claim 1 covers appellants' inventive concept, and that this inventive concept is not limited to the use of any particular kind of N-heterocyclic radicals so long as they have the general structure and chemical characteristics claimed. The invention is disclosed as a novel, useful and unobvious chemical structure responding to the general formula $R-C_nH_{2n}-R'$ and in which the R and R' radicals must possess a given structure as recited in the claim and be joined to the alkylene bridge in the particular manner recited therein. While such a claim is broad it does set forth specifically the radicals from which the selection of particular radicals must be made. This claim is therefore a proper claim.

Viewed in its entirety, the decision of the Board of Appeals relied upon grounds of rejection for which there is no express statutory basis. The nearest to a possible statutory basis we can find would be predicated upon the provisions of 35 U.S.C. § 112 which require an applicant to "particularly point out and distinctly claim" his invention. It is our opinion that appellants' appealed claim 1 meets this requirement, and, since the board did not spell out this ground of rejection, we are left with a rejection which appears to be based on the opinion of the board as to what constitutes proper public policy in granting a claim which is as broad in its scope as is claim 1.

■ We have pointed out primarily the features of appellants' invention which are claimed in claim 1 and for which we have found a basis in the specification. We believe it is as incumbent upon this court as it is upon the Patent Office to consider carefully the entire disclosure of an applicant and to evaluate the breadth of the claim against the disclosure.

The sole issue for determination in any case such as the present is whether there has been a legally sufficient disclosure of the invention to support a claim having the breadth here contended for.

This clear issue has been obscured by the actions below in which both the board and the examiner have judged the adequacy of only one part of the disclosure

while ignoring other parts and failing to consider all the asserted fields of utility.

The appealed claim covers a very large number of chemical compounds which may be developed in the future and which will possess the structure which applicants assert and the Patent Office admits is a novel structure. Due to the nature of chemical compounds and chemical processes it is conceivable that an almost infinite number of compounds may be developed by chemists if they have before them the teachings which appellants assert to be new in this field, namely, the particular structure and molecular arrangement of their new compounds. It seems to us that it is proper for the Patent Office to examine such assertions of patentability with great care but, when that has been done, the standards by which the ultimate determination of patentability or unpatentability should be made are those standards which Congress has provided in the patent statutes.

 In the final analysis the board's holding appears to be that as a matter of law nineteen examples are not enough to support a claim embracing many thousands of compounds. We are unable to agree to that proposition. The sufficiency of a disclosure depends not on the number but rather on the nature of the claimed compounds *per se* and the nature of the supporting disclosures. If a claim covers compounds which are closely related, a comparatively limited disclosure may be sufficient to support it. If, however, the claim covers compounds which are related only in some structural respects, a more extensive supporting disclosure may be necessary to support it. Moreover, the selection of the examples and other exemplary material used as the disclosure to support a claim must be adequately representative of the area covered by it. In some instances a limited disclosure which is typical of various areas covered by a claim may be of greater value in determining the patentable characteristics of the claimed compounds than a more extensive dis-

closure would be if related only to a limited portion of the area.

At the oral argument, appellants' counsel stated that the disclosure of appellants' invention should be likened unto the discovery of an island which could be located after its discovery by the reference or bearing points given by the discoverer. The impression he sought to convey by this analogy was that the disclosures in this application provided reference or bearing points which adequately mark out and establish the area of the invention and that claim 1, while admittedly broad, was no broader than the invention so disclosed.

In the instant case neither the examiner nor the board has undertaken to consider specifically the nature of the claimed compounds with respect to the adequacy of all the disclosures to support the appealed claim. For that reason, we are unable to determine from the present record whether the analogy to reference or bearing points is accurate. We are, therefore, of the opinion that the alleged insufficiency of appellants' disclosure is not clearly established by the facts stated in the board's opinion. For this reason we hold that on the record as now presented, the rejection of claim 1 is not properly supported.

We do not think that we should attempt to determine from the present record whether in fact the disclosure of this application is sufficient to support a claim of the breadth of claim 1. The examiner should have made this determination and a definite finding on the matter. In the absence of such a finding, both the board and this court are left without the benefit of his expert technical view on this important aspect of the case.

For the foregoing reasons, the decision of the Board of Appeals is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

WORLEY, Chief Judge, concurs in the result.