49 CCPA

**Application of Samuel GRANT.**
**Patent Appeal No. 6788.**

United States Court of Customs
and Patent Appeals.
July 18, 1962.

Lewis D. Konigsford, Chicago, Ill. (Max Wall, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges.

SMITH, Judge.

Appellant has appealed from the decision of the Board of Appeals of the Patent Office affirming the Primary Examiner's rejection of claims 15, 18, 20 and 22, of appellant's application Serial No. 456,314, filed September 15, 1954, for a "Cold Wave Neutralizing Composition and Process," on the sole ground of "undue breadth of recited terms and the lack of proper support in the original disclosure for said terms." No prior art references were relied upon. Five claims, 16, 17, 21, 23 and 24, have been allowed.

An understanding of the invention claimed in the rejected claims and of the basis for the rejection requires some background knowledge of the so-called cold permanent hair waving process. As set forth in appellant's brief:

"Hair is composed of a protein substance called keratin which contains a disulfide linkage in the molecule. The cold waving process employs certain substances which reduce the keratin by breaking this disulfide linkage and thus render the hair plastic, after which an oxidizing agent, called a neutralizer, is employed to restore the disulfide linkage and restore the resiliency of the hair. The usual keratin reducing solution employed in beauty parlors is thioglycolic acid in the form of the ammonium salt. In operation, the hair is wound upon a curler rod and is treated in this condition with the keratin reducing solution. Then, after a suitable time of treatment, the hair is treated with a neutralizer to complete the waving operation.

"Originally, hydrogen peroxide solution was used as the neutralizer, but sometime prior to the invention in this application, the art proposed the use of alkali metal bromates as neutralizers. A number of advantages for bromate neutralizer over hydrogen peroxide are asserted in the art, but need not be discussed here."

The application describes the discovery that ferrous, ferric and copper ions act as catalysts to increase the reaction rate of the bromate neutralizing agents. The invention disclosed therein relates to a

neutralizing composition comprising soluble iron or copper salts in solution with the bromate oxidizing agent to provide the desired catalytic ferrous, ferric or copper ions.

The application states that although copper ions show some catalytic effect at higher concentrations, it has been discovered that iron ions are most effective, even at low concentrations and even when the iron ions are complexed with a powerful sequestering agent such as ethylene diamine tetra acetic acid or its salts or derivatives, the catalytic action of the iron ions was not deleteriously affected. The minimum disclosed concentration of iron ions is "approximately 0.001% by weight" which corresponds to a concentration of 0.1% of mono sodium ferric ethylene diamine tetra acetate by weight, while the minimum cencentration of copper ion is about 0.1% by weight. The specification indicates that almost any soluble ionizable iron salt compound may be employed, such as ferric chloride, ferrous ammonium sulfate or mono sodium ferric ethylene diamine tetra acetate and to supply the copper ion, cupric chloride or other soluble copper salts may be employed.

The specification states the essence of the invention to be as follows:

"The essence of the present invention resides in the discovery that ferrous, ferric, and copper ions act as catalysts to increase the reaction rate of sodium and potassium bromate neutralizing agents. That is, the neutralizing composition of the present invention comprises soluble iron or copper salts in solution with the oxidizing agent to provide the desired catalytic ferrous, ferric, or copper ions. * * * Furthermore, even when the ferrous and ferric ions are complexed with a powerful sequestering agent such as ethylene diamine tetra acetic acid, or its salts or derivatives, the catalytic action of

the iron ions was not deleteriously affected."

Claim 15, for a process for neutralizing a keratin reducing cold wave solution on the hair, and claim 18, for the neutralizing composition, are as follows:

"15. A process for neutralizing a keratin reducing cold wave solution on the hair, said process comprising applying to the hair a neutralizing solution including bromate salts selected from the group consisting of alkali and alkali earth metals [sic [1]] and a sequestered compound of a heavy metal selected from the group consisting of iron and copper, said neutralizing solution containing at least 0.001 per cent by weight of the heavy metal.

"18. A composition for neutralizing a keratin reducing cold wave solution on the hair, said composition comprising an aqueous neutralizing solution of a water soluble bromate salt selected from the group consisting of alkali and alkali earth metal bromates and a sequestered compound of a heavy metal selected from the group consisting of iron and copper, said neutralizing solution containing at least 0.001 per cent by weight of the selected heavy metal."

Claim 20 is dependent on claim 18 and requires that the heavy metal be iron. Claim 22 is dependent on claim 20 and further requires that the compound contain about 2½ to 18 per cent of the soluble bromate salt.

The examiner's rejection of the appealed claims is based upon his finding that the broad recitations in the claims to "a sequestered compound" of iron or copper is not supported by disclosures in the application. Considering first the disclosure with respect to "a sequestered compound" of iron, the appellant's specification states that "the essence of the present invention" resides in the discovery that ferrous, ferric and copper ions

---

1. At the oral argument, counsel for appellant acknowledged the omission of "bromates" in this portion of the claim.

For the claim to be complete the word "metals" should be changed to read "metal bromates".

act as catalysts; that the iron ions are most effective even at low concentrations; that even when the ferrous and ferric ions are "complexed with a powerful sequestering agent, such as ethylene diamine tetra acetic acid or its salts or derivatives, the catalytic action of the iron ions was not deleteriously affected." Further, the specification states that the catalytic iron ions are provided in the neutralizing solution "by dissolving therein almost any soluble ionizable iron salt compound, such as ferric chloride, ferrous ammonium sulfate or 'sequestrene NaFe'" which is the common designation for mono sodium ferric ethylene diamine tetra acetate", but that "other iron compounds which dissolve to form ferric and ferrous ions may also be employed instead of the specific compounds enumerated. above." Thus, *one* specific example is disclosed of "a powerful sequestering agent" which can complex iron and *still retain* the required catalytic activity.

Appellant has included in his brief an excerpt from an article in the Journal of the Society of Cosmetic Chemists, Vol. 9, No. 2, June 1954, by Goodyear and Hathorn where (p. 98) the following definition is found:

"2. A sequestering agent is one which inactivates a metallic ion by forming a water-soluble complex in which the metal is held in non-ionizable form."

Thus, by definition, the normal function of a sequestering agent appears to be to *inactivate* a metallic ion by forming a water-soluble complex in which the metal is held in non-ionizable form. Appellant states in his brief:

"The specification nowhere uses the term 'sequestering agent' in anything other than a generic sense for describing a conventionally recognized class of compounds. * * *"

■ Appellant's position appears to be that where the specification describes the invention in broad terms, the fact that only one specific example is enumerated does not defeat the right to broad claims,

citing, In re Walker, 70 F.2d 1008, 21 CCPA 1121; In re Grimme, 274 F.2d 949, 47 CCPA 785, as well as a number of prior decisions by the Board of Appeals. The cited decisions relied upon by appellant are concerned with applications having broad disclosures and limited examples. In the present case there is but one example and, as stated by the board, there is no broad statement or even suggestion in the disclosure that *all* types of sequestering agents complexed with iron are suitable as a catalyst.

As pointed out by the examiner, other well known sequestering agents, of diverse nature, such as sodium hexametaphosphate, glycine compounds and the tetracyclines which have not been shown to be operative for appellant's purpose, would be covered by the broad term recited in the claims. Since sequestering agents are diverse in their molecular composition as well as in their ability to inactivate the metallic ion, and since catalytic behavior is generally recognized as being unpredictable, we do not agree with appellant's contention as to the generic nature of the disclosure regarding sequestered iron compounds. Such agents appear to be so diverse that it would seem to be beyond the ordinary skill in this art to predict from the action of the one disclosed specific agent that all sequestering agents would function the same, i. e., to *inactivate* the iron ion and yet permit the desired catalytic action of the iron ions. The disclosure is, we think, under the facts shown here, necessarily limited to the single example disclosed. Therefore, we agree with the board that the disclosure does not support the broad terminology of the appealed claims.

■ It is noted further that claims 15 and 18 refer to "a sequestered compound of a heavy metal selected from the group consisting of iron and copper." The pertinent disclosure with respect to "a sequestered compound" of copper is that "copper ions act as catalysts"; that soluble "copper salts" may be employed "in solution with the oxidizing agent to provide the desired * * * catalytic cop-

per ions"; and that "copper ions showed some catalytic affect [sic] at higher concentrations * * *". Further, it is stated that "if it is desired to employ copper ions as the catalytic agent instead of ferric or ferrous ions, cupric chloride or other soluble copper salts may be employed." Appellant conceded below that the specification does not disclose a specific sequestered complex of copper. In addition, the board held that there is no suggestion in the disclosure that a sequestered compound of copper will act as a catalyst. The reference in the disclosure to the sequestered iron compound cannot be construed to imply that the admittedly catalytically weaker copper will also be effective catalytically when similarly sequestered. We find no disclosure in the specification that a sequestered compound of copper will provide the required copper ion catalytic effect. We agree, therefore, with the board's conclusion that the disclosure contains no basis for including claims broad enough to cover "a sequestered compound" of copper as the catalyst.

Under these circumstances the undue breadth of the expression used in appealed claims 15 and 18 with respect to "a sequestered compound" of copper is manifest since "the essence" of appellant's invention is disclosed to be the discovery that the copper ions exert catalytic activity and increase the rate of reaction of the neutralizing agents.

Appellant relies upon the disclosed equivalency of copper and iron in urging the sufficiency of his disclosure. However, we do not find any teaching in the disclosure that all possible sequestered iron or copper compounds are equivalent or even that simple copper salts and sequestered copper compounds are equivalent as catalysts for the intended purpose. There is no disclosure whatsoever that sequestered copper compounds would act as catalysts, thus there is no support in the specification for claims based on the asserted equivalency of such compounds with other disclosed compounds.

The discovery upon which patentability is here predicated resides in a catalytic phenomenon, which is usually unpredictable. The language in the specification does not show that copper and iron are equivalents to produce the desired catalytic effect. Further, it does not disclose or suggest the use of sequestered compounds of copper as catalysts. Appellant's specification, reasonably and properly construed, cannot be interpreted to teach that all sequestered compounds "selected from the group consisting of iron and copper" will have a catalytic effect on the bromate solutions for the purpose intended. The appealed claims therefore fail to point out and distinctly claim the invention as it has been disclosed by the applicant. The decision of the board is affirmed.

Affirmed.