54 CCPA

**Application of Alexander R. SURREY.**

**Patent Appeal No. 7536.**

United States Court of Customs
and Patent Appeals.

Dec. 15, 1966.

Laurence & Laurence, Washington, D.
C. (Dean Laurence, Herbert I. Sherman,
Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C.
(Joseph Schimmel, Washington, D. C.,
of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the rejection of claim 17 in appellant's application[1] entitled "4-Thiazolidones and Oxide Derivatives Thereof."

The subject matter is evident from the claim, to which we have added emphasis to indicate the particular language giving rise to the issues of sufficiency of disclosure and new matter before us:

17. A compound of the formula

where *Ar is a member of the group consist of phenyl, naphthyl, biphenylyl, furyl, pyridyl, pyrimidyl, thiazolyl, oxazolyl, quinolyl, isoquinolyl, and thienyl radicals and such radicals substituted by one to three substituents selected from the group consisting of lower-alkyl, lower-alkoxy, lower-alkylmercapto, lower-alkylsulfonyl, halo, trifluoromethyl, nitro, amino, lower-alkylamino, lower-alkanoylamino, phenoxy, benzyloxy, hydroxy, phenylmercapto, benzyl and 4-chlorophenoxy,* Y is polycarbon-lower-alkylene having from two to six carbon atoms and having its two free valence bonds on different carbon atoms, Y' is a member selected from the group consisting of a direct linkage and lower-alkylene having from one to six carbon atoms, Q is a member selected from the group consisting of lower-alkyl having from one to six carbon atoms, unsubstituted-phenyl and phenyl substituted by one to three substituents selected from those given hereinabove

for the aromatic radical at the 2-position of the thiazolidone ring, Z is a member selected from the group consisting of S, SO and $SO_2$, and $R_1$ and $R_2$ each is selected from the group consisting of hydrogen and lower-alkyl.

In summarizing the examiner's rejection the board stated:

Claim 17 stands rejected as failing to define the invention in the manner required by 35 U.S.C. 112. The Examiner considers that the compounds recited in claim 17 lack adequate representative basis in the disclosure and that the claim is accordingly too broad and unduly speculative.

As an example of the contended lack of adequate representative basis in the disclosure for the compounds recited in the Markush group of the appealed claim the Examiner cites the oxazolyl member. The Examiner states that the claimed compounds include the class of 2-oxazolylthiazolidones wherein the oxazolyl radical may be substituted by one to three substituents selected from the group consisting of lower alkyl, lower alkoxy, lower alkylmercapto, lower alkylsulfonyl, halo, trifluoromethyl, nitro, amino, lower alkylamino, lower alkanoylamino, phenoxy, benzyloxy, hydroxy, phenylmercapto, benzyl and 4-chlorophenoxy. The Examiner states that the only support in the specification for an unsubstituted oxazolyl compound is the (4-oxazolyl) compound disclosed * * *, its oxide * * * and its dioxide * * *. The Examiner states that there are no examples of a substituted oxazolyl compound to support the various classes of oxazolyl compounds having 1 to 3 of the various substituents listed in the appealed claim.

The Examiner further states that there are no representative examples of substituted pyrimidyl, quinolyl, isoquinolyl, or thiazolyl compounds, and that many of the classes of naphthyl,

1. Serial No. 120,501, filed June 29, 1961. Claims 2–11 of the application have been allowed.

biphenylyl, furyl, thienyl and pyridyl are not represented.

It agreed with the examiner's finding that the specification did not adequately teach and fully illustrate the subject matter of the claim, stating that it could not find wherein the specification does in fact give examples to support many of the various classes of carbocyclic and heterocyclic "Ar" radicals having 1–3 substituents of the nature listed in the claim.

Whether a broad claim to chemical compounds is sufficiently supported by the disclosure as a whole, including compounds named and examples given in the specification, has frequently been considered by this court. In re Cavallito (PA 6502), 282 F.2d 357, 48 CCPA 711; In re Cavallito (PA 6508), 282 F.2d 363, 48 CCPA 720; In re Sus, 306 F.2d 494, 49 CCPA 1301; In re Cavallito (PA 6822), 306 F.2d 505, 49 CCPA 1335. That Congress intended adequate disclosures to support claims is clear from the positive language of 35 U.S.C. § 112:

### § 112. Specification

The specification shall contain a written description of the invention, and of the manner and process of making and using it, *in such full, clear, concise, and exact terms* as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. * * * (Emphasis supplied).

In applying those requirements, we stated in In re Cavallito (PA 6508 and 6822):

* * * The sufficiency of a disclosure depends not on the number but rather on the nature of the claimed compounds *per se* and the nature of the supporting disclosures. If a claim covers compounds which are closely related, a comparatively limited disclosure may be sufficient to support it. If, however, the claim covers compounds which are related only in some structural respects, a more extensive supporting disclosure may be necessary to support it. Moreover, the selection of the examples and other exemplary material used as the disclosure to support a claim must be adequately representative of the area covered by it. In some instances a limited disclosure which is typical of various areas covered by a claim may be of greater value in determining the patentable characteristics of the claimed compounds than a more extensive disclosure would be if related only to a limited portion of the area.

We turn, then, to an analysis of the "written description of the invention" in appellant's specification to determine if it does provide adequate representative basis for the compounds of the claim.

Appellant discloses certain 2-aromatic-4-thiazolidones, their -1-oxides and -1,1-dioxides having the formula

While the radical "Ar" is defined in the specification as an aromatic radical possessing the carbocyclic or heterocyclic ring structures substantially as enumerated in claim 17, preferred compounds are said to be those in which "Ar" is a radical of the benzene series, viz., a phenyl radical. Appellant then describes the nature and scope of the substituents which may be placed on the phenyl radical, again in language corresponding, for the most part, to that employed in claim 17. Appellant then states:

The other aromatic radicals, e. g., naphthyl, biphenylyl, furyl, pyridyl,

thienyl, etc., radical can be unsubstituted or substituted by substituents as illustrated above as substituents of the phenyl radical.

After further defining the nature and scope of Y, Y′, Q, Z, $R_1$ and $R_2$ appearing in claim 17, about which no question is raised here, and also setting forth in general terms the procedure employed to synthesize the compounds, appellant devotes most of the remainder of his specification to details as to how some 150 specifically named compounds "were prepared" or "can be prepared" by following the steps of four examples. Appellant has included in the record a convenient summary of that specific disclosure, our adaptation of which follows:

### Table A—Carbocyclic Compounds which "Were Prepared"

| Ar | Z | Y–O–Y′–Q | $R_1=R_2+H$ |
|---|---|---|---|
| 3,4–Cl$_2$–phenyl | S, SO, SO$_2$ | (CH$_2$)$_2$OCH$_3$ | |
| 2–Cl–phenyl | S, SO, SO$_2$ | (CH$_2$)$_2$OCH$_3$ | |
| 4–Cl–phenyl | S, SO, SO$_2$ | (CH$_2$)$_2$OCH$_3$ | |
| 2,4–Cl$_2$–phenyl | S, SO, SO$_2$ | (CH$_2$)$_2$OCH$_3$ | |
| 4–CH$_3$ O–phenyl | S, SO$_2$ | (CH$_2$)$_2$OCH$_3$ | |
| phenyl | S, SO, SO$_2$ | (CH$_2$)$_2$OCH$_3$ | |
| 3,4–Cl$_2$–phenyl | S, SO, SO$_2$ | (CH$_2$)$_3$OCH$_3$ | |
| 3,4–Cl$_2$–phenyl | S, SO | (CH$_2$)$_2$OC$_2$H$_5$ | |
| 3–Cl–phenyl | S, SO, SO$_2$ | (CH$_2$)$_2$OCH$_3$ | |
| 4–(4–NO$_2$C$_6$H$_4$O)–phenyl | S | (CH$_2$)$_2$OCH$_3$ | |
| 4–n–C$_4$H$_9$ O–phenyl | S, SO | (CH$_2$)$_2$OCH$_3$ | |
| 4–NO$_2$–phenyl | S, SO, SO$_2$ | (CH$_2$)$_2$OCH$_3$ | |
| 3,4–(CH$_3$)$_2$–phenyl | S, SO | (CH$_2$)$_2$OCH$_3$ | |

### Table B—Carbocyclic Compounds which "Can Be" Prepared

| Ar | Z=S, SO or SO$_2$ | Y–O–Y′–Q | $R_1=R_2=H$ |
|---|---|---|---|
| 2–CH$_3$–phenyl | | CH$_2$CH(CH$_3$)OCH$_3$ | |
| 4–i–C$_3$H$_7$–phenyl | | (CH$_2$)$_2$OC$_3$H$_7$–i | |
| 4–I–phenyl | | (CH$_2$)$_2$OC$_4$H$_9$–n | |
| 3–Br–phenyl | | (CH$_2$)$_2$OC$_6$H$_{13}$–n | |
| 2,4,6–Cl$_3$–phenyl | | (CH$_2$)$_4$OCH$_3$ | |
| 4–CH$_3$O–phenyl | | (CH$_2$)$_6$OC$_2$H$_5$ | |
| 3–C$_2$H$_5$O–phenyl | | (CH$_2$)$_3$OC$_3$H$_7$–n | |
| 3,4–(CH$_3$O)$_2$–phenyl | | (CH$_2$)$_3$OC$_2$H$_5$ | |
| 3–Cl–4–CH$_3$O–phenyl | | (CH$_2$)$_2$OCH$_3$ | |
| 4–n–C$_3$H$_7$S–phenyl | | CH$_2$CH(C$_2$H$_5$)OC$_2$H$_5$ | |
| 4–n–C$_4$H$_9$SO$_2$–phenyl | | (CH$_2$)$_2$OCH$_3$ | |
| 3–CF$_3$–phenyl | | (CH$_2$)$_2$OC$_2$H$_5$ | |
| 4–CH$_3$CONH–phenyl | | (CH$_2$)$_3$OCH$_3$ | |
| 4–NH$_2$–phenyl | | (CH$_2$)$_2$OCH$_3$ | |
| 4–n–C$_4$H$_9$NH–phenyl | | (CH$_2$)$_2$OCH$_3$ | |
| 4–C$_6$H$_5$O–phenyl | | (CH$_2$)$_2$OC$_2$H$_5$ | |
| 3–C$_6$H$_5$CH$_2$O–phenyl | | (CH$_2$)$_3$OC$_2$H$_5$ | |
| 2–HO–phenyl | | (CH$_2$)$_2$OCH$_3$ | |
| 4–C$_6$H$_5$S–phenyl | | (CH$_2$)$_2$OCH$_3$ | |
| 3–C$_6$H$_5$CH$_2$–phenyl | | (CH$_2$)$_2$OCH$_3$ | |
| 4–(4–ClC$_6$H$_4$O)–phenyl | | (CH$_2$)$_3$OC$_2$H$_5$ | |

Table C—Carbocyclic and Heterocyclic Compounds
which "Can Be" Prepared

| Ar | Z=S, SO, or SO$_2$ | Y–O–Y'–Q | R$_1$ | R$_2$ |
|---|---|---|---|---|
| 2–naphthyl | | (CH$_2$)$_2$OCH$_3$ | CH$_3$ | H |
| 4–biphenylyl | | (CH$_2$)$_2$OCH$_2$C$_6$H$_5$ | H | H |
| 2–furyl | | (CH$_2$)$_2$OCH$_3$ | H | H |
| 3–pyridyl | | (CH$_2$)$_2$OCH$_3$ | H | H |
| 4–pyridyl | | (CH$_2$)$_2$OCH$_2$CH$_2$C$_6$H$_5$ | C$_2$H$_5$ | H |
| 3–thienyl | | (CH$_2$)$_2$OCH$_2$C$_6$H$_4$–4–Cl | H | H |
| 2–thienyl | | (CH$_2$)$_2$OCH$_3$ | CH$_3$ | CH$_3$ |
| 2–C$_2$H$_5$O–1–naphthyl | | (CH$_2$)$_2$OC$_6$H$_5$ | H | H |
| 5–NO$_2$–2–furyl | | (CH$_2$)$_2$OC$_6$H$_3$–3,4–Cl$_2$ | H | H |
| 5–Cl–3–pyridyl | | (CH$_2$)$_2$OCH$_3$ | H | H |
| 3,4,5–Br$_3$–2–thienyl | | (CH$_2$)$_2$OC$_6$H$_4$–4–OCH$_3$ | C$_2$H$_5$ | C$_2$H$_5$ |
| 5–pyrimidyl | | (CH$_2$)$_2$OCH$_3$ | H | H |
| 4–thiazolyl | | (CH$_2$)$_2$O(CH$_2$)$_4$C$_6$H$_5$ | H | H |
| 4–oxazolyl | | (CH$_2$)$_2$O(CH$_2$)$_2$C$_6$H$_4$–4–Cl | H | H |
| 3,4–Cl$_2$–phenyl | | (CH$_2$)$_2$OCH$_3$ | CH$_3$ | H |
| 3–quinolyl | | (CH$_2$)$_2$OCH$_3$ | H | H |
| 3,4–Cl$_2$–phenyl | | (CH$_2$)$_2$OCH$_3$ | n–C$_3$H$_7$ | H |
| 3,4,5–(CH$_3$O)$_3$–phenyl | | (CH$_2$)$_2$OCH$_3$ | H | H |
| 3–isoquinolyl | | (CH$_2$)$_2$OCH$_3$ | H | H |

Appellant urges that his specification does contain a "written description" of the invention which is in sufficiently "full, clear, concise, and exact terms" as to satisfy the requirements of Sec. 112. He contends that the examiner and board looked only to the specific examples present in the specification, and did not consider the entire disclosure of the application. While appellant concedes the description conceivably might have been fuller, the statute also requires the description to be "concise" and, according to appellant, it "is undisputed that the methods of preparation given would enable any chemist to make any compound within the scope of the claims."

On that narrow aspect of the issue, we agree with appellant. As we stated in In re Grimme, 274 F.2d 949, 47 CCPA 785:

* * * It is manifestly impracticable for an applicant who discloses a generic invention to give an example of every species falling within it, or even to name every such species. It is sufficient if the disclosure teaches those skilled in the art what the invention is and how to practice it.

Here it would appear to serve no useful purpose to lengthen the disclosure further with examples of compounds which "can be prepared," or to delineate further the 2-heterocyclic or carbocyclic thiazolidones which appellant contemplates. When one considers the specific examples in Table C above along with appellant's statement in his specification that those aromatic radicals can be substituted with the same substituents exemplified for the phenyl radical, we think the requirement that there be a full, yet concise, disclosure of the claimed compounds has

been met. No question has been raised that the necessary intermediates[2] obviously contemplated by appellant to be used in synthesizing the 2-aromatic thiazolidones are not in fact known to those skilled in the art, or that one of ordinary skill would have any difficulty employing any of them in the particular synthesis procedure appellant has developed.

However, the examiner and board have given further reasons in support of the rejection under section 112 which we think, under the circumstances here, requires affirmance of that rejection. The board stated:

As further evidence of the undue breadth and speculative nature of appealed claim 17, the Examiner points out that the only compounds actually tested which demonstrated the asserted psychomotor stimulatory and anticonvulsant properties were those having the 3,4-dichlorophenyl substituent at the 2-position on the thiazolidone nucleus, which substituent is designated "Ar" in the appealed claim. The Examiner notes that no compounds wherein "Ar" is heterocyclic were tested. We agree with the Examiner's contention that there is no reasonable basis for a conclusion that all of the diverse compounds covered by the claim would be equivalent to the small and homogeneous group actually tested, and that the appealed claim is so broad as to cover compounds the utility or operativeness of which for the disclosed purpose is speculative.

With regard to the usefulness of his compounds, appellant's specification states:

The physical embodiments of my invention have been tested by standard pharmacological evaluation procedures and found to possess psychomotor

stimulatory properties and anticonvulsant properties. These compounds also have the additional advantageous property of having relatively low toxicity. The compounds where Z is S have further utility as intermediates for the preparation of the compounds where Z is SO or $SO_2$. Also the compounds where Z is SO can be used as intermediates for the preparation of the compounds where Z is $SO_2$.

\* \* \* \* \* \*

My compounds of formula I, as illustrated by the foregoing examples, are of particular interest because they possess psychomotor stimulatory properties, exhibit anticonvulsant activity and have low toxicity. When administered orally to mice \* \* \*, they were found to have psychomotor stimulatory properties at dose levels of about 25 to 400 mg. per kg. of body weight. For example, the following compounds produced marked stimulation at doses of about 200 mg. per kg.: 2-(3,4-dichlorophenyl)- 2-(2-methoxyethyl)-4-thiazolidone, 2-(3,4-dichlorophenyl) -3-(3-methoxypropyl) -4-thiazolidone, 2-(3,4-dichlorophenyl)-3-(2-methoxyethyl) -4-thiazolidone -1-oxide, 2-(3,4-dichlorophenyl) -3-(3-methoxypropyl)-4-thiazolidone-1-oxide, 2-(3,4-dichlorophenyl) -3-(2-methoxyethyl) -4-thiazolidone -1,1-dioxide and 2-(3,4-dichlorophenyl) -3-(3-methoxypropyl) -4-thiazolidone-1,1-dioxide.

The compounds of my invention protect against metrazol and maximal electroshock convulsions when tested by standard procedures in mice, e. g., the calculated dose ($PD_{50}$) of 2-(3,4-dichlorophenyl) -3-(2-methoxyethyl) -4-thiazolidone -1-oxide for protecting 50% of the animals against maximal electroshock was 265 $\pm$ 29.4 mg. per

2. Appellant prepares his 2-aromatic thiazolidones by reacting an azomethine of the formula ArCH=N–Y–O–Y'–Q with an α–mercaptoacetic acid of the formula $HSC(R_1)$ $(R_2)COOH$. The azomethine compounds, in turn, are prepared by reacting an aromatic aldehyde, ArCHO, with an amine, $NH_2$–Y–O–Y'–Q. The existence of such aromatic aldehydes, substituted by 1–3 radicals of the type enumerated in claim 17, has not been questioned.

kg. orally and 116 $\pm$ 26.5 mg. per kg. intraperitoneally; similarly, this compound was found to have an oral $PD_{50}$ of 76 $\pm$ 13.0 mg. per kg. and an i.p. $PD_{50}$ of 51 $\pm$ 10.7 mg. per kg. when administered to mice prior to challenge with metrazol (50 mg. per kg. i.v.).

As illustrative of the low toxicities of my compounds, the following compounds were found to have approximate acute oral toxicities ($ALD_{50}$) in mice in the range of about 1000 to 4000 mg. per kg.: 2-(3,4-dichlorophenyl)-3-(2-methoxyethyl) -4-thiazolidone, 2-(3,4-dichlorophenyl) -3-(2-methoxyethyl)-4-thiazolidone-1-oxide, 2-(3,4-dichlorophenyl) -3-(3-methoxypropyl) -4-thiazolidone-1-oxide and 2-(3,4-dichlorophenyl) -3-(3-methoxypropyl) -4-thiazolidone-1,1-dioxide.

In view of the above disclosure in his specification, appellant contends the additional reasons given by the board are untenable with respect to an issue under section 112, which requires that the written description teach those skilled in the art "how to use" the invention. The specification, appellant says, does just that—if the examiner and board had doubts as to the operativeness of the compounds for the disclosed purpose, a rejection under 35 U.S.C. § 101 should have been made.

■ We doubt whether simply denoting the reasons given by the examiner and board as applying to a section 112 or section 101 rejection would have clarified matters further for appellant, particularly where he had notice of those reasons

prior to the board's decision and the examiner's Answer.[3] Manifestly, a disclosure which does not adequately establish compounds as useful for an asserted purpose does not adequately describe "how to use" those compounds either. Moreover, as we stated in In re Cavallito (PA 6502):

* * * We agree with the board that the possible existence of compounds falling within the scope of the claims, but not having the utility set forth in appellant's specification, may properly be considered in connection with a rejection on undue breadth.

* * * * * *

* * * It is not necessary to determine whether the presence of one or two useless compounds within the scope of a claim to a chemical compound would render it unpatentable, but where the applicant seeks to obtain a monopoly in exchange for his disclosure of a group of compounds there should be a disclosure which gives reasonable assurance that all, or substantially all of them are useful. That is especially true where, as here, the claims are not drawn in terms of a recognized genus but are directed to a more or less artificial selection of compounds. There is no reason why a claim drawn in this way should not be limited to those compounds which are shown to be both new and useful. An applicant is not entitled to a claim for a large group of compounds merely on the basis of a showing that a selected few are useful and a general suggestion of a similar utility in the others. * * *

---

3. The record shows that, in the final rejection, the examiner said:
* * * The claim is so broad as to be speculative as to utility and mere listing of possibilities as a basis of the terms does not avoid the speculativeness of the disclosure.
As noted above, the board has summarized the examiner's position as set forth in his Answer.
In a reply brief to the examiner's Answer, appellant countered the examiner's reasoning with the statement:

* * * The Examiner reverses the usual position of the Patent Office (supported by many CCPA and other authoritative holdings) that analogous chemical structures can generally be presumed to have similar properties; instead here the Examiner takes the position that the groups involved are so diverse in character as to raise doubts as to their imparting like properties. * * *
As will appear, we do not regard the present compounds to be "analogous."

■■ Absent supporting evidence in the record, we are not prepared to say that the diverse classes of compounds embraced by the appealed claim are so closely related or analogous that extrapolation of the activity of the 2-dichlorophenyl compounds to the 2-heterocyclic compounds is warranted. Of course, nothing of consequence is to be gained by including repetitive examples in the specification, all asserting generally the same kind of biological activity, for each and every compound dominated by the claim. Such a requirement would tend to place an undue burden on an applicant and prevent early filing of an application. We think, however, appellant here has failed to provide those of ordinary skill in the art, the Patent Office and this court, reasonable assurance, as by adequate representative examples, that the compounds falling within the scope of the claim will possess the asserted usefulness. We find no unequivocal statement in appellant's specification or in his brief here that compounds other than those actually tested are anticonvulsants or psychomotor stimulants. Appellant simply says the *"physical embodiments"* of his invention "have been tested * * * and found to possess" the named properties. Those "physical embodiments," insofar as the record shows, are the 3,4-dichlorophenyl compounds and perhaps other substituted phenyl compounds which "were prepared," not those which "can be prepared." It seems to us that one skilled in this art would not necessarily be taught by the written description of the invention that any 2-aromatic thiazolidone dominated by the claim, or their 1-oxides or 1,1-dioxides, would likely possess the asserted usefulness, but rather that only the 2-substituted phenyl thiazolidone would be so useful. See In re Sus; In re Cavallito (PA 6822).

The view we take of this appeal makes it unnecessary to consider whether the expression "lower-alkanoylamino" employed in claim 17 constitutes new matter.

The decision is affirmed.

Affirmed.

MARTIN, Judge, participated in the hearing of this case but died before a decision was reached.

SMITH, Judge (dissenting).

The statutory commands of 35 U.S.C. § 112 each refer to "the invention" for which a patent is sought. Here the persistent failure to determine and articulate "the invention" which is in issue, as expressly required by section 112, has compounded the confusion for the court. Appealed claim 17 is directed to "a compound" having a formula which by reason of its statement in Markush form actually encompasses what the solicitor's brief refers to as "a number of compounds of diverse structure running into six or seven figures." However, "the invention" with which we are here concerned may be something more than "a compound" as claimed in appealed claim 17. Thus, appellant states in his specification:

This invention relates to 2-aryl-4-thiazolidones, -1-oxides and -1,1-dioxides, and is particularly concerned with certain 3-substituted derivatives thereof and methods for the preparation of such derivatives.

\* \* \* \* \* \*

The physical embodiments of my invention have been tested by standard pharmacological evaluation procedures and found to possess psychomotor stimulatory properties and anticonvulsant properties. These compounds also have the additional advantageous property of having relatively low toxicity. The compounds where Z is S have further utility as intermediates for the preparation of the compounds where Z is SO or $SO_2$. Also the compounds where Z is SO can be used as intermediates for the preparation of the compounds where Z is $SO_2$.

It seems clear to me that the rejection here is fatally defective. In the examiner's answer it is stated:

Claim 17 stands finally rejected as failing to define the invention properly, 35 U.S.C. 112. Specifically, the claim is broader than the disclosure * * *.

This rejection was affirmed by the board. As I understand the rationale of the majority opinion on what it terms "that narrow aspect of the issue," the majority agrees with appellant. Thus the specification contains a "written description of the invention," and it sets forth "the manner and process of *making* and *using* it, in such full, clear, concise, and exact terms as to enable any person skilled in the art * * * to make and use the same * * *" 35 U.S.C. § 112. Further, there is no argument that the appealed claim fails to particularly point out and distinctly claim the subject matter which the appellant regards as his invention. This, it seems to me, requires a reversal of the only ground of rejection which has been stated with the particularity required by 35 U.S.C. § 132.

There is, however, an indistinct and somewhat murky ground of rejection which has its genesis in the above quoted portion of the specification where reference is made to the "psychomotor stimulatory properties and anticonvulsant properties" of "physical embodiments" of the invention which have "relatively low toxicity." Apparently considering these statements as being "the invention," the examiner's answer states as a further ground of rejection:

The claim is also regarded as being unduly speculative because the relatively few compounds actually prepared and tested are not adequately representative of the diverse classes of compounds which are claimed (In re Cavallito et al., 282 F.2d 357, 48 CCPA 711; In re Grant, 304 F.2d 676, 49 CCPA 1215; In re Cavallito et al., 1962 C. D. 607).

It seems clear that what the examiner has done is to confuse the field of assert-ed utility of the claimed "compound" with "the invention" being claimed. This appears rather clearly from further portions of the examiner's answer which state:

The disclosure is also regarded as being unduly speculative with regard to utility. The compounds are stated to possess psychomotor stimulatory properties and anticonvulsant properties (specification page 1, lines 15–19). The compounds actually demonstrating such utility are shown at pages 16–17, beginning with the paragraph bridging the two pages. All of these compounds have the 3, 4-dichlorophenyl substituent at the 2-position on the thiazolidone nucleus, which substituent is designated as "Ar" in the appealed claim. No compounds wherein "Ar" is heterocyclic are tested. There is no reasonable basis for the conclusion that all of the diverse compounds embraced by the claim would be equivalent to the very small and homogeneous group actually demonstrating such properties.

* * * In the field of therapeutics, where prediction is very limited, the scope of the claims must correspond closely to the compounds sufficiently closely related to those actually tested that their properties would be expected to be similar. The diverse classes of compounds embraced by the appealed claim are not so closely related that extrapolation of the activity of the dichlorophenyl compound to the various heterocycles is warranted. (In re Oppenauer, 143 F.2d 974, 31 CCPA 1248; Am. Chem. Paint Co. v. Firestone, 6 Cir., 117 F.2d 927).

The board formulated its own statement of the rejection which, however, does not seem to me to be quite the same as the examiner's rejection. The board stated:

Claim 17 stands rejected as failing to define the invention in the manner required by 35 U.S.C. 112. The Examiner considers that the compounds recited in claim 17 lack adequate repre-

sentative basis in the disclosure and that the claim is accordingly too broad and unduly speculative.

Later in its opinion the board amplifies on its view of the rejection and states:

* * * We agree with the Examiner's contention that there is no reasonable basis for a conclusion that all of the diverse compounds covered by the claim would be equivalent to the small and homogeneous group actually tested, and that the appealed claim is so broad as to cover compounds *the utility or operativeness of which for the disclosed purpose is speculative.* [Emphasis added.]

From the foregoing it seems to me that the real basis of the rejection is the failure of appellant to establish a reasonable basis for assuming that all compounds coming within the appealed claim would have the utility or operativeness set forth for "the small and homogeneous group actually tested," in other words, a failure to establish utility commensurate in scope with the appealed claim. 35 U.S.C. § 101. The requirements of section 101 and section 112 should not be confused. Whether the specification teaches one of ordinary skill in the art how to make and use the invention presents a different and independent inquiry than whether the use disclosed satisfies section 101 or whether the invention described is useful. Where the objection is, in effect, that it is not believed that the invention is operable as described or useful for the asserted purpose it seems to me that section 101 is the basis for the rejection. Whether the invention is useful, within the meaning of the law, is independent of the fact that the specification teaches one of ordinary skill in the art how to make and use the invention. Nor does satisfying section 112 prove section 101 is satisfied.

It is apparent that a rejection based on "undue breadth" of the claims fails to define which section of the Patent Act is being relied on. As the examiner and board specified that the rejection is based on section 112, it seems to me our deliberations should be confined to the consideration of the reasoning of record relevant to a rejection properly based on that section. Accordingly, as I find this reasoning to be insufficient to support a rejection under section 112, I would reverse the decision of the board.